IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-136-FL

| | |
|---|---|
| NICHOLAS KOUMALATSOS, | ) |
| Plaintiff, | ) |
| v. | ) |
| TOWN OF HOLLY RIDGE, NORTH CAROLINA; CAPTAIN EWAN RICHARDS, in his individual and official capacity; MAYOR JEFF WENZEL, in his individual and official capacity; LORI FAIRCLOTH, in her individual and official capacity; and TOWN MANANGER HEATHER REYNOLDS, in her individual and official capacity, | ) ORDER |
| Defendants. | ) |

This matter is before the court on defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (DE 19). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendants' motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on July 17, 2020, asserting claims under 42 U.S.C. § 1983, for alleged violation of his Fourth and Fourteenth Amendment rights; conspiracy claims under 42 U.S.C. § 1985; as well as state law claims for civil conspiracy, trespass, and claims under the North Carolina Constitution. Plaintiff seeks compensatory, statutory, and punitive damages; attorneys' fees; costs; interest; and jury trial.

On September 18, 2020, defendants filed the instant motion to dismiss for lack of subject matter jurisdiction, arguing plaintiff lacks standing. In support, defendants reply upon a memorandum of law and exhibits, including: 1) assumed business name certificate for Alexander Industries LLC ("Alexander Industries"), 2) articles of organization for Alexander Industries, 3) 2020 annual report for Alexander Industries, and 4) selected pages from website concerning Snap Fitness 24/7 in Holly Ridge, North Carolina. Plaintiff responded in opposition on October 9, 2020, and defendants replied on October 30, 2020.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. On May 31, 2018, plaintiff, as chief executive officer of Alexander Industries, purchased a health, fitness, and exercise facility known as Snap Fitness 24/7 (the "Gym"). (Compl. (DE 2) ¶ 16). Plaintiff operates the Gym with his wife as a family business in Holly Ridge, North Carolina. (Id. ¶¶ 17-18).

On March 23, 2020, the Governor of North Carolina issued executive order 120, prohibiting mass gatherings of more than 100 people at indoor exercise facilities and subjecting violators to prosecution under North Carolina General Statute § 166A-19.30(d) for a Class 2 misdemeanor. (Id. ¶ 22). As a result, plaintiff closed the Gym on March 25, 2020. (Id. ¶ 23). Approximately one month later, plaintiff re-opened the Gym, allegedly implementing guidance from the Centers for Disease Control and Prevention. (Id. ¶ 24).

On May 7, 2020, members of the Holly Ridge Police Department allegedly entered the Gym through the front door, which was open to allow proper ventilation. (Id. ¶ 26). Defendant Captain Ewan Richards ("Richards") allegedly ordered the patrons of the Gym to leave immediately, or face prosecution, and ordered another officer to issue plaintiff a citation for violation of Executive Order 120. (Id. ¶¶ 27-29).

Shortly thereafter, Keith Whaley ("Whaley"), Holly Ridge Chief of Police, informed plaintiff that the citation would be rescinded, and further citations would not be issued until plaintiff had been given three warnings, in accordance with Holly Ridge Police Department's policy. (Id. ¶ 31). Relying upon the three warning policy, plaintiff reopened the Gym on May 8, 2020. (Id. ¶ 33). The next day, Whaley issued plaintiff his first warning. (Id. ¶ 35).

Plaintiff operated the Gym from May 9, 2020, until May 18, 2020, without receiving additional warnings or other contact from the Holly Ridge Police Department. (Id. ¶ 36). However, on May 18, 2020, defendant Richards, defendant Heather Reynolds ("Reynolds"), the Town Manager, and defendant Lori Faircloth ("Faircloth") allegedly conspired to meet, and did meet, at the Gym to conduct a search in furtherance of their investigation. (Id. ¶¶ 37-38). Defendants Faircloth and Richards allegedly gained access to the Gym, through a keycard that the Gym's prior owner had provided to defendant Town of Holly Ridge, North Carolina ("Town"). (Id. ¶¶ 39-40). Once inside of the Gym, defendants Richards and Faircloth allegedly threatened patrons with criminal prosecution, and defendant Richards took pictures of the patron's license plates to solidify the alleged threats. (Id. ¶¶ 40-42).

Plaintiff alleges that neither he nor his staff authorized defendants' keycard access. (Id. ¶ 41). Moreover, defendants allegedly did not seek a search warrant from a neutral magistrate prior to entering the Gym. (Id.).

**COURT'S DISCUSSION**

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart

from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[ ] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

B. Analysis

1. Lack of Standing

It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show 1) an "injury in fact," meaning an injury that is "concrete and particularized" and "actual or imminent; 2) a " causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable" to the defendant' s actions; and 3) a likelihood that the injury "will be redressed by a favorable decision." Id. at 560–61.

Defendants argue plaintiff lacks standing, on grounds that Alexander Industries, rather than plaintiff, owns the Gym. Plaintiff concedes that he purchased the Gym in his capacity as chief executive officer and managing member of Alexander Industries. (Mem. (DE 21) at 2).

"It is considered a 'fundamental rule' that 'a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'" Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel, 20 F.3d 1311, 1317 (4th Cir. 1994) (quoting Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731 (2d Cir. 1987)). This rule, sometimes referred to as the "shareholder standing" rule, applies equally in the context of limited liability companies, such as Alexander Industries. See Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 347–48 (4th Cir. 2013) ("[T]he Vitales have failed to account for the fact that they elected to conduct their business through a limited liability company ('LLC') and that, just as they received protection of their personal assets from liability in doing so, they also assumed a role as agents for the company. At bottom, they gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence.") (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006)).

"While this rule . . . is regularly encountered in traditional business litigation, it also has been uniformly applied on the infrequent occasions it has arisen in suits against the state for statutory or constitutional violations." Smith Setzer & Sons, 20 F.3d at 1317 (citations omitted); see Flynn v. Merrick, 881 F.2d 446, 450 (7th Cir.1989) (explaining that shareholders lack standing to bring § 1983 action claiming injury to the corporation in which they own shares); Potthoff v. Morin, 245 F.3d 710, 717 (8th Cir. 2001) (explaining that an individual shareholder's § 1983 claim "can survive only if he has alleged that he personally has suffered a direct, nonderivative injury"). Therefore, plaintiff, as chief executive officer and managing member of Alexander

Industries, lacks standing to assert claims on behalf of Alexander Industries, and such claims must be dismissed without prejudice.

Nevertheless, plaintiff contends that he is asserting a claim for violation of his own Fourth Amendment rights, rather than those of Alexander Industries. The Fourth Amendment does not require an individual to own a premises in order to have a reasonable expectation of privacy therein. See Byrd v. United States, 138 S. Ct. 1518, 1527 (2018) ("[I]t is by now well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." (citations omitted)). Here, plaintiff alleges that defendants Richards and Faircloth unlawfully, and without authorization, gained access to the Gym using a keycard defendant Town obtained from the Gym's prior owner. (Compl. (DE 2) ¶¶ 40-41). Once inside the Gym, defendant Richards and Faircloth allegedly threatened and harassed staff and patrons with criminal prosecution, and defendant Richards allegedly took pictures of all of the license plates of patron's vehicles parked in the Gym's parking lot. (Id. ¶¶ 40, 42).

Plaintiff fails to allege a direct injury to his Fourth Amendment rights, distinct from the alleged injury to Alexander Industries's Fourth Amendment rights; importantly, he does not allege that he was at the Gym when the alleged search or seizure took place, that he was searched, or that his property was seized. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 353 (1977) (explaining that although "a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context[,]" a corporation's premises is protected by corporation's Fourth Amendment rights); United States v. Vicknair, 610 F.2d 372, 379 (5th Cir. 1980) ("When corporate property is seized or searched, an individual cannot assert the corporation's Fourth Amendment rights absent a showing that he had an

independent privacy interest in the goods seized or the area searched."); Ruttenberg v. Jones, 603 F. Supp. 2d 844, 860–61 (E.D. Va. 2009) (holding that a shareholder of a corporation, who was not present during search of the corporation, lacked standing to bring a Fourth Amendment claim under 42 U.S.C. § 1983, where she alleged no distinct harm to her own Fourth Amendment rights).

Plaintiff's reliance on Mancusi v. DeForte, 392 U.S. 364 (1968) is misplaced. In Mancusi, the United States Supreme Court held that a union official had a reasonable expectation of privacy in an office that he shared with other union officials, such that he could contest the search of that office, and the seizure of papers from therefrom, which were in the union official's custody at the time of the search. 392 U.S. at 369-370. Attempting to analogize the instant matter to Mancusi, plaintiff contends that he, like the union official, maintained an office and workspace at the Gym, and therefore, he had a reasonable expectation of privacy that is needed to contest the search of the Gym. Unlike the union official in Mancusi, however, plaintiff does not allege he was on the premises when the search occurred, nor does he allege that his office space, or any area of the Gym not freely accessible to patrons, was searched. In addition, plaintiff does not allege that any papers in his office space were seized. Therefore, Mancusi is instructively distinguishable.

For all these reasons, plaintiff lacks standing, and his complaint is dismissed without prejudice.[1] See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject

---

[1] Plaintiff contends that standing within the context of the Fourth Amendment is not a threshold issue that must be addressed at this stage, relying on Byrd, 138 S. Ct. at 1530, for the proposition that whether a person has a cognizable Fourth Amendment interest should not be confused with Article III standing. Aside from his 42 U.S.C. § 1983 claim for violation of the Fourth Amendment, plaintiff asserts claims for conspiracy under 42 U.S.C. § 1985, as well as state law claims for civil conspiracy, trespass, and claims under the North Carolina Constitution, which receive no mention in his briefing. Moreover, as stated in more detail herein, plaintiff's complaint does not allege a violation of his rights, including those under the Fourth Amendment, that is separate and distinct from the rights of Alexander Industries, and he lacks standing to assert claims on Alexander Industries's behalf. As a result, the standing issue is ripe for address.

matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

2.  Possibility of Amendment

Defendants argue that lack of standing cannot be cured by subsequent amendment. Defendants' contention is incorrect. As the United States Supreme Court has held, "[t]he rule that subject-matter jurisdiction depends on the state of things at the time of the action brought, does not suggest a different interpretation . . . when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74 (2007) (internal quotations and citations omitted); see Freeman v. First Union Nat., 329 F.3d 1231, 1235 (11th Cir. 2003), ("[Plaintiffs] should have been given the opportunity to cure the standing defect . . . Accordingly, we conclude that the district court erred in denying as futile the Creditor Plaintiffs' motion to amend the complaint."); Daniels v. Arcade, L.P., 477 F. App'x 125, 131 (4th Cir. 2012) ("[E]ven if Daniels had not visited the Market until the period between the filing of the original complaint and when he became a party to this case by way of the amended complaint, Daniels had standing to pursue, and the district court had jurisdiction to adjudicate, the claims alleged in the amended complaint.").

Cases cited by defendants are inapposite, where the courts cited did not address whether a plaintiff may move to amend complaint to cure standing defects. See Dash v. FirstPlus Home Loan Owner Tr. 1996-2, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) ("Plaintiffs' characterization of their suit as a putative class action in no way cures this [standing] defect."); Harty v. Lumber River Assocs., LLC, No. 7:11-CV-146-FL, 2012 WL 3870370, at *3 (E.D.N.C. Sept. 6, 2012) (explaining that "in granting the defendant's motion to dismiss [for lack of standing] the court did

not consider the plaintiff's alleged future plans to return, also articulated in an affidavit submitted in conjunction with her response to the motion to dismiss, because they had clearly been made after the filing of the complaint."); Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (explaining that if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum); Jackson v. Resol. GGF Oy, 136 F.3d 1130, 1132 (7th Cir. 1998) (stating that the court need not decide whether an entity would be a proper defendant if the class had been certified, where none of the representative plaintiffs held a legal claim against the entity).

Accordingly, plaintiff is allowed to file motion to amend complaint, if he so chooses.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 19) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff is allowed **21 days** from the date of this order to file a motion for leave to amend complaint. In the event plaintiff does not file amended complaint within this time period, the clerk is DIRECTED, without further order of the court, to enter judgment for defendants on the basis of this order and close the case.

SO ORDERED, this the 12th day of May, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

9