IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-136-FL

| | | |
|---|---|---|
| ALEXANDER INDUSTRIES, LLC, | ) | |
| | ) | |
| Plaintiff,[1] | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF HOLLY RIDGE, NORTH | ) | |
| CAROLINA; CAPTAIN EWAN | ) | ORDER |
| RICHARDS, in his individual and official | ) | |
| capacity; LORI FAIRCLOTH, in her | ) | |
| individual and official capacity; and TOWN | ) | |
| MANANGER HEATHER REYNOLDS, in | ) | |
| her individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 32). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendants' motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Former plaintiff Nicholas Koumalatsos ("Koumalatsos"), commenced this action on July 17, 2020, asserting claims for violation of federal and state constitutional rights, as well as common law claims, arising in the course of a search of an exercise facility allegedly initiated by defendants, Town of Holly Ridge, North Carolina ("Holly Ridge"), and officials and officers of Holly Ridge.

---

[1] The court constructively has amended the caption of this order to reflect addition of plaintiff Alexander Industries, LLC, and termination of former plaintiff Nicholas Koumalatsos and former defendant Jeff Wenzel.

Koumalatsos sought compensatory, statutory, and punitive damages; attorneys' fees; costs; interest; and jury trial.

On May 12, 2021, upon defendants' motions, this court dismissed without prejudice former plaintiff Koumalatsos's claims, on the basis that Koumalatsos did not have standing to assert claims on behalf of the owner of the exercise facility. See Koumalatsos v. Town of Holly Ridge, N. Carolina, No. 7:20-CV-136-FL, 2021 WL 1910030, at *4 (E.D.N.C. May 12, 2021). Shortly thereafter, with the court's leave, Koumalatsos filed the operative amended complaint substituting plaintiff in the matter for Koumalatsos, adding additional factual allegations, and seeking the same relief, plus an added request for nominal damages.

Defendants filed the instant motion to dismiss on August 6, 2021, seeking dismissal of all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition, and, shortly after submission of the motions by the clerk, plaintiff filed a stipulation of dismissal of plaintiff's first, fourth, and fifth causes of action, comprising its conspiracy claims and claims under the North Carolina Constitution. Plaintiff also noticed voluntary dismissal of all claims against defendant Jeff Wenzel.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint[2] may be summarized as follows. On May 31, 2018, plaintiff purchased a health, fitness, and exercise facility known as Snap Fitness 24/7 (the "gym") located in Holly Ridge. (Compl. ¶¶ 16-17). Koumalatsos is plaintiff's chief executive officer. (Id. ¶ 28).

On March 23, 2020, the Governor of North Carolina issued Executive Order 120, prohibiting gatherings at indoor exercise facilities and subjecting violators to prosecution under

---

[2] Hereinafter, all references to the complaint or "Compl." in citations are to the amended complaint filed July 23, 2021 (DE 31).

North Carolina General Statute § 166A-19.30(d) for a Class 2 misdemeanor. (Id. ¶ 22). As a result, plaintiff closed the gym on March 25, 2020. (Id. ¶ 23). Approximately one month later, plaintiff re-opened the gym, allegedly implementing guidance from the Centers for Disease Control and Prevention. (Id. ¶ 24).

On May 7, 2020, members of the Holly Ridge police department allegedly entered the gym through an open and unlocked door at the entrance of the facility. (Id. ¶ 26). Defendant Ewan Richards ("Richards"), a police department captain, allegedly ordered the patrons of the gym to leave immediately, or face prosecution, and ordered another officer to issue Koumalatsos a citation for violation of Executive Order 120. (Id. ¶¶ 27-29).

Later that same day, Keith Whaley ("Whaley"), Holly Ridge chief of police, informed Koumalatsos that the citation would be rescinded, and further citations would not be issued until plaintiff had been given three warnings, in accordance with police department policy. (Id. ¶¶ 31-32). Relying upon that policy, plaintiff reopened the gym the next day. (Id. ¶ 34). On May 9, 2020, Whaley issued plaintiff its first warning. (Id. ¶ 36).

Plaintiff operated the gym thereafter from May 9, 2020, until May 18, 2020, without receiving additional warnings or other contact from the Holly Ridge police department. (Id. ¶ 37). However, on May 18, 2020, defendant Richards, who then identified himself as the acting chief of police after Whaley was placed on administrative leave on May 14, 2020; defendant Heather Reynolds ("Reynolds"), Holly Ridge town manager; and defendant Lori Faircloth ("Faircloth"), a police department detective, allegedly conspired to meet, and did meet, at the gym to conduct a search in furtherance of an investigation. (Id. ¶¶ 39-40, 47). Defendants Faircloth and Richards allegedly gained access to the gym's entrance with a keycard that the gym's prior owner had provided to defendant Holly Ridge. (Id. ¶ 41). Once inside the gym, defendants Richards and

3

Faircloth allegedly threatened patrons with criminal prosecution, and upon exiting defendant Richards took pictures of the patrons' license plates. (Id. ¶¶ 43, 46). Defendant Reynolds remained in the parking lot during the alleged search but at one point approached the gym's door to confer with defendant Richards. (Id. ¶ 44).

Plaintiff alleges that neither it nor any member of its staff authorized defendants' keycard access and indeed plaintiff had no knowledge of its existence. (Id. ¶¶ 45, 53). Plaintiff further alleges that the gym was locked, and a keycard was necessary to enter the premises. (Id. ¶¶ 42, 121). Moreover, defendants allegedly did not seek a search warrant from a neutral magistrate prior to entering the gym. (Id. ¶¶ 45, 54).

## COURT'S DISCUSSION

A.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

---

3   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

B. Analysis

1. Fourth and Fourteenth Amendment Claim

In its second claim, plaintiff asserts that defendant Richards and defendant Faircloth violated plaintiff's Fourth and Fourteenth Amendment rights by entering the gym without plaintiff's knowledge or permission, and without a warrant. Defendants contend plaintiff fails to state a claim because plaintiff fails to allege a reasonable expectation of privacy in the gym. The court disagrees.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV.[4] "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment . . . ." Katz v. United States, 389 U.S. 347, 357 (1967); see Doe v. Broderick, 225 F.3d 440, 451 (4th Cir. 2000) ("When law enforcement officials are searching for evidence of a crime, reasonableness requires probable cause and a warrant unless one of the exceptions to the warrant requirement applies.").

"The application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979); see Illinois v. Caballes, 543 U.S. 405, 408 (2005) ("Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment.").

---

[4] The Fourteenth Amendment, which plaintiff additionally invokes, is relevant to the analysis only insofar as it "incorporated the protections of the Fourth Amendment against the States." Torres v. Madrid, 141 S. Ct. 989, 997 (2021).

5

A two-fold requirement applies in determining whether an individual has a reasonable expectation of privacy: first, the individual must have demonstrated "actual (subjective) expectation of privacy," and second, "the expectation [must] be one that society is prepared to recognize as reasonable." Katz, 389 U.S. at 361; see also United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010). "The burden of showing a legitimate expectation of privacy in the area searched rests with the [person challenging the search]." United States v. Castellanos, 716 F.3d 828, 832 (4th Cir. 2013); see id. at 833 (requiring showing in a criminal case by a preponderance of the evidence). Here, defendants assert plaintiff fails to allege facts demonstrating a reasonable expectation of privacy in the gym as "[t]here is no reasonable expectation of privacy in those areas of a business premises that are freely accessible by customers in the ordinary course of business." (Def.s' Mem. (DE 33) at 8).

"An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger, 482 U.S. 691, 700 (1987). Nevertheless, the Supreme Court has "long recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises." Id. at 699; see See v. City of Seattle, 387 U.S. 541, 543 (1967) ("The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property.").

Drawing the line between what commercial premises are protected and what are not hinges on what structures or policies were in place to maintain privacy in the disputed space. For "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz, 389 U.S. at 351. "But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Id.

6

In determining whether investigative officers have crossed the line between what is public and what is private, the United States Supreme Court has looked to whether investigative officers accessed the commercial space in the same way that members of the public reasonably would. See Maryland v. Macon, 472 U.S. 463, 469 (1985) ("[R]espondent did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business."); Lewis v. United States, 385 U.S. 206, 211 (1966) ("A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant."); see also United States v. Lewis, 864 F.3d 937, 943 (8th Cir. 2017) (looking to whether investigative officers accessed the commercial space "on the same terms as members of the general public"); United States v. Dunford, 983 F.Supp. 658, 664-66 (E.D. Va. 1997) (looking to whether the officer was "merely acting as any customer can" within the premises).

In accordance with that principle, the Fourth Circuit held "clearly established Fourth Amendment principles prohibited officers from searching private areas within commercial or business premises" "concealed by locked cabinets and doors" in the absence of a search warrant grounded upon probable cause. Doe, 225 F.3d at 453-55. In so holding, the court relied in part on the Supreme Court's observation in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) that a state prosecutor "directly caused the violation of petitioner's Fourth Amendment rights when he instructed officers who were standing in the public reception area of a medical clinic to forcibly enter, without a search warrant, the private portion of the clinic which was closed off by a door." Doe, 225 F.3d at 454 (emphasis added).

In Mancusi v. DeForte, 392 U.S. 364 (1968) the Supreme Court additionally held a reasonable expectation of privacy could exist in such a space even where it is shared:

7

> "[I]t seems clear that if DeForte had occupied a 'private' office in the union headquarters, . . . . DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. It seems to us that the situation was not fundamentally changed because DeForte shared an office with other union officers. <u>DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office</u>, and that records would not be touched except with their permission or that of union higher-ups."

<u>Id.</u> at 369 (emphasis added).

Applied here, plaintiff alleges facts from which a reasonable expectation of privacy can be inferred. Plaintiff alleges that the door to the gym was locked and could only be opened by gym members with a keycard. (Compl. ¶¶ 72, 121). Defendants Richards and Faircloth allegedly accessed the gym with such a keycard obtained by defendant Holly Ridge "from the [g]ym's prior business owner, whom [defendants] knew owned the [g]ym more than ten years prior." (<u>Id.</u> at ¶ 41; <u>see</u> ¶ 51 (alleging the mayor of defendant Holly Ridge issued a video and press release in which he provided the town "was given a key card in 2010 for 'police purposes' by the previous owners of the [g]ym"). Plaintiff further alleges neither it nor its staff issued the keycard, and plaintiff "revoked the card upon learning of its existence." (<u>Id.</u> at ¶¶ 45, 53).

Although the gym regularly was accessed by members of the public belonging to it and in possession of a keycard, that alone does not render plaintiff's expectation of privacy unreasonable. Just as the defendant in <u>Mancusi</u> "could reasonably have expected that only those [with whom he shared the office] and their personal or business guests would enter the office," plaintiff reasonably could have expected that only gym members with keycards would access it, according to the allegations in the complaint. <u>Mancusi</u>, 392 U.S. at 369. Indeed, defendants Richards and Faircloth allegedly only were able to access the gym with such a keycard. (Compl. ¶ 41). Construing the alleged facts in the light most favorable to plaintiff, defendants Richards and Faircloth did not

8

access the gym "on the same terms as members of the general public," and they thereby defeated plaintiff's reasonable expectation of privacy in the premises. Lewis, 864 F.3d at 943.

The cases on which defendants rely in support of their motion are inapposite. For example, in United States v. Perry, 548 F.3d 688 (8th Cir. 2008), the court held that a defendant did not have a reasonable expectation of privacy in a Veteran of Foreign Wars ("VFW") hall despite defendant's assertions that it was a "members-only" establishment and the door was regularly locked. Id. at 691. In so holding, as pertinent here, the court relied on the fact that while "several officers testified they regarded the VFW as a 'members-only' establishment," the record did not reflect that VFW had a policy in place to restrict admission. Id. Further, the court held that even assuming there was an admissions policy in place, there was no evidence that the policy was strictly enforced. Id. at 292; see United States v. Lewis, 864 F.3d 937, 942 (8th Cir. 2017) (describing Perry as holding an "individual can have no reasonable expectation of privacy at [a] 'members-only' club if [the] club did not enforce [the] 'members-only' policy"). Further, the record showed that officers had regularly accessed the building without complaint and largely without restraint – in the past they had pressed a buzzer and waited a few moments before the door was unlocked. Id. at 690 ("The VFW does not maintain someone at the door to verify compliance with whatever admissions policy is in place."). By comparison, plaintiff alleges that the gym had a policy in place of allowing only gym members onto the premises. (Compl. ¶ 72). That policy was enforced by requiring a keycard to gain entry. (Id. at ¶¶ 72, 121). That the officers allegedly accessed the gym by obtaining a keycard is a testament to that policy and the fact that it was enforced. (See id. ¶ 41).[5]

---

[5] Plaintiff additionally alleges that defendants accessed the gym on May 7, 2020, "by walking through an open and unlocked door at the entrance of the facility," which apparently contradicts its claims elsewhere that the gym was closed to the public and accessible only by keycard. (Compl. ¶ 26). However, at this juncture, the court cannot fairly infer from one occasion a general policy of leaving the door open. That is particularly true here where defendants

As to Lewis, on which defendants additionally rely, there the court found a defendant had no reasonable expectation of privacy in the work area of a tattoo shop as there were "no indications that the work area was off limits to the public." Lewis, 864 F.3d at 942. The court so found in part because there was no door separating the work area from a waiting area which was open to the public. Id. at 942-43. As the reception desk was also unattended, "reasonable members of the general public would believe they could pass through the work area to speak to an employee." Id. at 493; accord Macon, 472 U.S. at 469 ("[R]espondent did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business." (emphasis added)); Dow Chem. Co. v. United States, 476 U.S. 227, 236-37 (1986) ("Dow's inner manufacturing areas are elaborately secured to ensure they are not open or exposed to the public from the ground. Any actual physical entry by EPA into any enclosed area would raise significantly different questions." (emphasis added)). Here, plaintiff alleges there was a locked door separating the gym from the public. (Compl. ¶¶ 42, 72). Thus, Lewis is inapposite.

Defendants also argue that defendant Richards and defendant Faircloth are entitled to qualified immunity. A government official sued in his or her personal capacity may invoke the doctrine of qualified immunity. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). "Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test . . . : (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Id. "[T]here does not need to be a case directly on point for a right to be clearly established, and the

---

allegedly planned to and did in fact acquire a keycard for the purpose of entering the facility. (Id. at 39-40). Were the door regularly left open, or the facility otherwise easily accessible, such additional steps would presumably not have been necessary.

10

fact that the [right requires] a fact-specific inquiry does not excuse [defendants] from abiding by clearly established law." Gilliam v. Sealey, 932 F.3d 216, 235 (4th Cir. 2019). "Qualified immunity thus provides a safe-harbor from tort damages for police officers performing <u>objectively reasonable</u> actions in furtherance of their duties." Doe, 225 F.3d at 453 (emphasis in original). "This safe-harbor ensures that officers will not be liable for bad guesses in gray areas but only for transgressing bright lines." Id.

In accordance with the foregoing analysis, plaintiff's allegations, if true, substantiate the violation of its Fourth Amendment right to be free from an unreasonable search. Thus, the relevant inquiry is whether that right was clearly established. In answering that question, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson v. Layne, 526 U.S. 603, 615 (1999). In this case, the appropriate objective inquiry is whether reasonable officers in May 2020 would have known that entering the locked door of a members-only commercial premises with a keycard issued by a prior owner was unlawful "in light of clearly established law and information the officers possessed." Id. As also established by the forgoing analysis, that question must be answered in the affirmative at this juncture in the case.

Indeed, in Doe the Fourth Circuit denied a defendant detective qualified immunity where the record showed he entered a locked, patient records room not open to the general public without probable cause. 225 F.3d at 455. Finding the "proposition that police officers should obey the Fourth Amendment before searching private areas concealed by locked cabinets and doors" clearly established, the court held the defendant detective "transgress[ed] bright lines marking the limits of his qualified immunity protection." Id. 453, 455.

It follows from the Fourth Circuit's analysis that, although "the very action in question [here] . . . [may not have] previously been held unlawful," namely police allegedly entering a

11

Case 7:20-cv-00136-FL   Document 38   Filed 01/31/22   Page 11 of 15

member's only gym with a keycard acquired from a prior owner, "in light of pre-existing law the unlawfulness . . . [should have been] apparent." Id. at 455; (see Amended Compl. (DE 31) ¶ 45). In addition, the right allegedly violated here has foundation in Katz itself. See Katz, 389 U.S. at 352 ("One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." (emphasis added)). That members of the public belonging to the Gym regularly accessed it does not alter the analysis, as it was equally well-established that access so limited does not defeat an otherwise reasonable expectation in privacy. See Mancusi, 392 U.S. at 369.

In sum, that part of defendants' motion seeking dismissal of plaintiff's second claim, due to lack of reasonable expectation of privacy, is denied.[6]

2. Trespass

In its sixth claim, plaintiff claims defendants Reynolds, Richards and Faircloth committed the tort of trespass. Defendants argue that they are protected from liability due to public official immunity. The court agrees in part, as to defendant Reynolds, but disagrees as to defendants Richards and Faircloth.

Public official immunity protects a defendant against individual liability so long as he "lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption." Smith v. State, 289 N.C. 303, 331 (1976). Thus, a public officer may not be sued in his or her individual

---

[6] Defendants additionally move to dismiss plaintiff's third claim against the town of Holly Ridge in its supervisory capacity, suggesting that if plaintiff failed to allege defendants engaged in unconstitutional conduct, it necessarily fails to state a claim against the town for supervision of that conduct. As the court determines plaintiff has plausibly alleged defendants Richards and Faircloth violated the Fourth and Fourteenth Amendment, the court additionally denies that part of defendants' motion seeking dismissal of plaintiff's third claim.

12

capacity unless the plaintiff alleges the action was 1) outside the scope of his or her authority, 2) malicious, or 3) corrupt. Id.

A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." Grad v. Kaasa, 312 N.C. 310, 313 (1984). An act is "wanton" where "it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. However, there is a general presumption "that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551(1981).

Here, plaintiff makes sufficient allegations that defendants Richards's and Faircloth's actions were such that "a[n officer] of reasonable intelligence would know" them "to be contrary to his [or her] duty" and additionally manifested an intention "to be prejudicial and injurious to [plaintiff]." See Grad, 312 N.C. at 313. Pursuant to the foregoing analysis, on the facts alleged, defendants Richards and Faircloth acted in clear violation of the Fourth Amendment on May 18, 2020, when they accessed the gym using a keycard issued by the prior owner. (See Compl. ¶ 41). Their alleged actions were thus "contrary to [their] duty" to uphold the law, and they were allegedly committed for the prejudicial purpose of investigating plaintiff for violations of an executive order.[7] See Grad, 312 N.C. at 313; (Compl. ¶ 38). Plaintiff further alleges that defendants planned the time and the means of the alleged search. (Compl. ¶¶ 39-40). Despite

---

[7] That plaintiff was "actively defying Governor Cooper's Executive Orders," as defendants assert, is not presently relevant to this question. (Def.s' Mem. (DE 33) at 15). Unless one of the exceptions to the warrant requirement applies, which defendants do not argue here, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." Katz 389 U.S. at 357. In so holding, the court does not preclude defendants from raising on more complete record a defense based upon emergency or exigent circumstances.

13

having such time to plan, plaintiff alleges defendants never attempted to obtain a warrant to search the gym. (Id. ¶ 54). Thus, taking plaintiff's allegations as true, defendants Richards and Faircloth acted "needlessly, manifesting a reckless indifference to the rights of others." Grad, 312 N.C. at 313. As plaintiff makes sufficient allegations that defendants Richards and Faircloth acted maliciously or at least beyond the scope of their duties, defendants' motion invoking federal official's immunity is denied in this part.

As to defendant Reynolds, however, plaintiff fails to plead facts showing she acted corruptly, maliciously, or beyond the scope of her duties. Plaintiff alleges defendant Reynolds "conspired to meet at the [g]ym to conduct an unlawful search of [p]laintiff's commercial premises" and further "directed and assisted [d]efendant Richards and [d]efendant Faircloth in unlawfully gaining access to the nonpublic area of [p]laintiff's commercial premises without [p]laintiff's consent." (Compl. ¶¶ 38-39, 118). However, plaintiff fails to "factual[ly] enhance[]" these "bare assertions," beyond asserting that defendant Reynolds "remained in the parking lot" during the alleged search and at one point approached the gym's locked door to confer with defendant Richards. Nemet 591 F.3d at 255; (Compl. ¶ 44). These allegations alone are insufficient to overcome the general presumption that public officials act fairly, impartially, and in good faith. See In re Annexation Ordinance No. 300-X, 304 N.C. at 551.

Plaintiff's arguments to the contrary are unavailing. In particular, plaintiff argues defendant Reynolds acted beyond the scope of her duty in accompanying defendants Richards and Faircloth to the gym as "[t]he role of town manager is an administrative position, not a law enforcement position." (Pl. Mem. (DE 36) at 8). However, plaintiff's complaint directly contradicts that allegation, as it provides "at all times relevant to this action," defendant Reynolds "was acting under color of law within the course and scope of her duties as [t]own [m]anager."

14

(Compl. ¶ 8); see, e.g., Doe by next friend Pullen-Smith v. Qually, No. 5:20-CV-523-FL, 2021 WL 2546456, at *11 (E.D.N.C. June 21, 2021) (noting the same and allowing the defense of public official's immunity as to that defendant).

Thus, as to defendant Reynolds, defendants' motion is granted, and plaintiff's claim asserted against her in her individual capacity is dismissed.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 32) is GRANTED IN PART and DENIED IN PART. Plaintiff's trespass claim against defendant Reynolds is DISMISSED WITHOUT PREJUDICE. That being the only remaining claim against defendant Reynolds, the clerk is DIRECTED to terminate defendant Reynolds as a party. Plaintiff's remaining claims are ALLOWED to proceed, comprising the following: plaintiff's second and third claims in their entirety, and plaintiff's sixth claim against defendants Richards and Faircloth.

Where the parties' scheduling activities were previously stayed pursuant to this court's order entered September 24, 2020, the court now LIFTS that stay. Pursuant to Federal Rule of Civil Procedure 12(a)(4), a responsive pleading must be served within 14 days of this order.

SO ORDERED, this the 31st day of January, 2022.

LOUISE W. FLANAGAN
United States District Judge